Our second case of this morning, Folajar, if I pronounce that correctly, the Attorney General at all, number 19-1687, Mr. Prince and Mr. Nemerov. How do you pronounce your client's name? Folajtar, Your Honor. Folajtar? Folajtar. Okay, got it. May it please the Court, my name is Attorney Joshua Prince and I represent the appellant, Ms. Folajtar, in this appeal. I would like to reserve five minutes of rebuttal time. That's fine. Based upon the historical analysis required by Heller and this Court's decision in Binderup, and the absence of any historical support for the denial of a constitutional right, especially the right to keep and bear arms in relation to the failure to pay a tax or making false statements on a tax return, the district court's decision granting the government's motion to dismiss must be overturned. In fact, there's a certain irony in the government's position in this case that Ms. Folajtar should be prohibited in perpetuity from being able to keep and bear arms, including the core of that right, the right to even have a firearm in her home. And that irony is the fact that our founding fathers refused to pay a tax. They did not believe that the refusal to pay that tax prohibited them. And, in fact, they actually took up arms against the king. So when we look to the historical analysis. In effect, are you saying that you would extend what was done in Binderup and Suarez to felonies, provided that they are nonviolent or what? Yes, I believe consistent with the decision this Court rendered in Binderup, there are a number of factors, first under the seriousness prong, and then the secondary factors if some form of scrutiny is to apply, what level of scrutiny. But the Supreme Court, as you know, did say, Justice Scalia and Hiller, that certain things can be excluded, including, among others, felonies. They mentioned that, but they said that we don't have at this juncture a case before us to discuss those presumptions. And those were only presumptions. The Court was clear about that. And, in fact, this Court dealt with those presumptions in Binderup. All right. Well, your argument here seems to be that this is limited to people who do something that's dangerous. But there are lots of crimes that maybe they're not themselves violent crimes. You take burglary. You take arson. You take drug trafficking or possessing drugs with intent to distribute. Statistically, there's a real connection between a willingness to violate the law in at least these ways and violence. It might be now. It might be later. Does the government have to wait until someone shoots somebody? I don't know that the government has to wait until someone shoots someone. But Your Honor used a key word. There is evidence. And here, there is no evidence. The government hasn't provided any evidence that an individual who makes a false statement on a tax return is likely to resort to violence. And, in fact, they had the opportunity. We submitted evidence showing the opposite. We submitted evidence showing that the Bureau of Alcohol, Tobacco, Firearms, and Explosives previously granted relief to individuals in the identical situation as Ms. Fuligitar, finding that there is no likelihood. And Congress found that that inquiry was unworkable and decided to close it off. And not aware of any evidence that that kind of inquiry was done historically at the founding, we experimented for a little while. It proved to be difficult to do. And then are they bound to do it forever because they tried it out and it failed? Actually, Congress didn't ban it. Congress just defunded it. And what's interesting is that. That pretty much does it. Well, but what's interesting is the two reports that the government relies on for that contention. There are just bold assertions without any support. And the one report actually said we believe the states should be conducting these analyses. But that was in relation to state law prohibitions or federal prohibitions triggered from state law convictions. But we also discussed the extraordinary resources that were being spent and the number of man hours that were being spent on trying to do those individualized determinations. And so why shouldn't we look to the legislature itself making the determination and the cutoff by distinguishing something as a felony as opposed to a misdemeanor? Because there's no actual blanket support for that. And, again, if we are looking at the Bindrup decision as controlling or Mazzarella that came before Bindrup that Bindrup then reaffirmed and gave a little bit more flesh to the bones of Mazzarella, there's simply no support just for a blanket prohibition without looking to the underlying context. At the time of the founding, felonies were nominally capital. Now, capital punishment wasn't always carried out. But you could execute somebody, right? Forgery. So if you can execute someone, does the government have the lesser power to say you can live? We just don't want to trust you with your guns anymore. Well, and if we look at what the common law felonies actually were, and we addressed this in our briefing, nowhere within there do we find making false statements on a tax return or failing to pay a tax to the king or to the government. Social memories may change as to what constitutes a very serious crime in society. But isn't that determination one that belongs with the legislature? And certainly the number may have expanded and there are crimes, for example, computer fraud, things that couldn't conceivably have been felonies back at the time. Why isn't it the province of the legislature to determine that this is so serious, this is such a reflection of an unvirtuous citizenry, that someone who engages in this type of conduct is outside of the scope of the Second Amendment? They forfeited those rights. First, it's a constitutional right. Second, if we compare the total max incarceration permitted for Miss Folagetar versus Bindrup, Mr. Bindrup could have actually served two more years than Miss Folagetar. The maximum under Pennsylvania law for a misdemeanor of the first degree is five years. Under the code provision 26 U.S.C. 72061 that Miss Folagetar was convicted under, the maximum was three years. So this Court actually found that in relation to Mr. Bindrup, that had a more severe possible penalty, he could sufficiently establish that challenge. We also saw that Mr. Bindrup actually received the exact same sentence that Miss Folagetar did in relation to the probationary time. I think Judge Krause's question, though, is the legislature chose, the state legislature chose to call those misdemeanors. Federal law was overriding a state determination of seriousness with an overwrought blanket rule. Here, the federal government has chosen to call this a felony, and by the way, it also looks as if most states treat equivalent state tax fraud as a felony in their states. So does that make it a consensus that this is a serious crime? I don't believe so. And actually, the district court didn't even go under the analysis of the cross-jurisdictional analysis. They didn't even consider it. We had submitted it. The court said because it's a federal offense, we're just going to look to federal law. We can affirm on any ground in the record. I understand that, Your Honor. And we believe that there is other context that needs to be considered in a case like this, especially the fact that it's nonviolent. Yes, it is a felony. But you have to look beyond just simply the title. We have to look to what was the offense? What was the sentence imposed, if any? What was the maximum penalties that were permitted by the law? And, again, look to whether this is really, truly a valid basis for stripping someone of a constitutional right where it's nearly making a false statement. Where can you take from Heller and McDonald that we have the green light to do that, where the court said in both cases that nothing that they had said there should be read to call into doubt the longstanding prohibition on felons in possession of firearms? And the court said right thereafter that there will be time enough for this court to consider those exact types of challenges, that those decisions themselves did not all of a sudden invalidate the Gun Control Act, National Firearms Act, and those laws that exist. But that challenges in the future may come, and then the court will have to address those, and that's why they're only presumptions. The court didn't say that absolutely they were lawful under the Second Amendment. The text in Heller and, again, in McDonald, in McDonald the court went out of its way to give the additional reassurance, repeating what it previously said, that it was not calling into question the prohibition on felons in possession. The presumption language you're taking from a footnote, where it was talking about other kinds of cases that might come up in the future, and so since it's not pronouncing on them, of course the court is going to use some caveat-like presumptive, because that's not the case before them. But how do we elevate an adverb in a footnote to go so far beyond what the plain text of both opinions says? Because I, again, believe that the court wasn't addressing those, and it wasn't stating either way. It wasn't saying that it's an absolute that these cannot be challenged, and, in fact, this court struggled with that exact question in Bindrup. So, counsel, I think you're getting at the root problem here, which is Judge Krause has articulated a very clean line, and you said, well, there'll be time enough, there's examples. Take your metaphor. This is a Pandora's box, a slippery slope, a can of worms, whatever it is. The government has a clean line. Do you have a line here that's not going to mean we're litigating every single one of these cases, every time someone's convicted of something and says, hey, I'm not dangerous, or this wasn't really that serious? I believe it's looking to the historical analysis that Heller and McDonald had reviewed, and whether under the historical analysis. Summarize what your historical analysis. Give me a couple sentences of what you think the history tells us. Was it a common law felony at the time of founding where the founding fathers would agree that the individual was prohibited from being able to keep and bear arms? And was that a violent offense? I believe that as Amici had submitted in their brief, they did an extensive review of the understanding, not just here in the United States, but also in Europe at the time of our founding, as to what the understanding was where someone could be divested of their right to keep and bear arms. Drug trafficking was not an offense at the time of the common law, at the founding. Not itself has violence as an element. Therefore, drug traffickers have the right to have guns? If you haven't been convicted of an offense, there would be no prohibition specific just being a drug trafficker. You have to have been convicted of something before the Gun Control Act would prohibit the person. That's assumed. Assume you've been convicted of a felony drug trafficking crime. Is your position that the government cannot categorically take away your gun rights? I see a matter of time. May I respond, Your Honor? Yes, go ahead. I would say based on the understanding of our founding fathers at the time our country was founded, those individuals would not be prohibited in that to the extent there is a desire to prohibit those individuals, there is an amendment process by which we the people can amend the Constitution and change it to support whatever the desires or the will of the people is. As I see a matter of time, I will be happy to answer any further questions on rebuttal. Unless the Court has questions now for me. We'll get you back to rebuttal. Mr. Nemeroff. Good morning, Your Honors. Patrick Nemeroff on behalf of the government. May it please the Court. This Court's decision in Bindrup forecloses the vast majority of arguments that my opposing counsel has made this morning. So just to go through a couple of them. The first point is whether or not someone can ever regain the right to possess firearms. The Court said that once someone is convicted of a serious crime, they forfeit the right to possess arms and evidence of rehabilitation, passage of time cannot restore that right. So this discussion about, you know, 925C and what ATF used to do, really, as the Court said in Bindrup, that was a matter of legislative grace. It's irrelevant to the scope of the constitutional right. And so it has no bearing here. The second point was counsel argued that any nonviolent crime would not result in the loss of Second Amendment rights. But this Court held precisely the opposite. Counsel, first of all, that was a three-judge controlling concurrence. We'd have to discuss marks to figure out what to do with that. But let's assume, let's assume that the seriousness test applies. Violence was an important factor in that seriousness test. So your friend on the other side's position is, my crime was not violent. No one's scared if someone doesn't collect, doesn't pay taxes, et cetera. And she never served a day in jail. Prison or jail is our normal incapacitative sentence for people we're scared of. Doesn't that constitute a case-specific determination by her judge and her prosecutor that she's not dangerous, which at least weighs greatly in the seriousness calculus? So there's a lot to your question, Your Honor, and if I could unpack it. I think the first thing you asked is, you know, with regards to whether the opinion there is controlling. And I would say not only did the court or Judge Amber's opinion in VendorUp say that it was the controlling opinion, but this court has since treated it as controlling in years. A mental illness case, not a crime case. I agree, Your Honor, but I do think it would be difficult not to treat it as controlling at this point. But that said, moving on, now the question about violence versus nonviolent, I would note that not only did this court in VendorUp say that the scope of serious crimes can include nonviolent crimes, but every other court of appeals to address the issue has reached the exact same conclusion. So if you look at the felonies at issue in, for example, the Fourth Circuit's decision in Hamilton, that was credit card fraud. The D.C. Circuit's decision in Medina, that was lying on a loan application, you know, fraud in a loan application. The decision in Cantor in the Seventh Circuit was Medicare fraud. It's like nobody wants to make the first step. There are some courts that say theoretically it could happen, but we're not going to do it here. Right, Your Honor, and there's good reason for that. As this court explained in VendorUp, the scope of the Second Amendment right attached to law-abiding responsible citizens, the virtuous citizenry, and a commission of a serious crime, regardless of whether or not it's violent, removes someone from that citizenry just like it does with respect to the right to vote, the right to serve on a jury. Whether or not it's violent is just one of the characteristics in the four-pronged test that was articulated in VendorUp. Exactly. Another one was whether it's a misdemeanor or a felony. Exactly, Your Honor. So if we turn to the last part, I think, of Judge Peebles' question, which is sort of looking at all the factors here, there were four factors, all of which indicated that the crimes in VendorUp were not serious. So the court relied on every single one of those four factors in finding that those crimes were not serious. The first one, and the one that the court put great weight on, was the fact that those crimes were labeled by the state as a misdemeanor. And the court said that where a crime is labeled a felony, the burden on the individual to show that that crime is not serious would be extraordinary and perhaps insurmountable. So clearly, that alone is a very strong indication. But we didn't rule it out, and we also said it's possible to read Heller as bringing that same opportunity for an as-applied challenge. Right? So we think, as we've articulated in our brief, that the fact that this crime is labeled a felony should be considered sufficient. And I think the Fourth Circuit's decision in Hamilton is instructive. What the court said there, it discussed the opinion in VendorUp. It said that's a well-reasoned opinion. But we don't need to go through that sort of multifactor analysis here, because what we're dealing with here are crimes that are labeled felonies. That said, the other factors here also show that this crime is serious. And I think most importantly, is the consensus that this is a criminal conduct. So not only is this a federal felony and thus would be criminal no matter where the individuals live, but this is considered criminal by every state, analogous conduct and a felony by the vast majority of states. Whereas by contrast, in VendorUp, one of the individual's crimes conduct would not have been criminal in many states. And both individuals conducted or engaged in conduct that would not have been deemed a felony by the majority of states. So there's a really a strong contrast here. And then the last just judge, because you mentioned the sentence imposed. I would note that in VendorUp, the court said that the sentences imposed on those two individuals was minor by any standard. They didn't have any time of confinement. One paid a three hundred dollar fine. The other paid a five hundred dollar fine. Here, the individual was sentenced to three months home confinement. She paid a ten thousand dollar fine. And in connection with her same conduct, she paid over two hundred and fifty thousand dollars to the IRS. So I don't think it could be considered minor by any measure. But again, all four factors indicated non seriousness in VendorUp. Here, we certainly don't have that. And the two factors that the court signaled out as particularly important. So the fact that. Indulge me for a moment. I understand your position is that the concurrence in VendorUp controls or that Beers has validated it. Let's ask as an original, let's assume that we're not bound to treat that as a holding where there's room to disagree. What originalist or historical evidence is there that before nineteen sixty one that non dangerous or non violent crimes are not exactly the same thing? Were not involved some kind of deprivation of the right to bear arms. So I think it's two pieces of evidence, your honor. The first is that the Second Amendment right has traditionally attached to whether it's law abiding responsible citizens, as the Supreme Court said in Heller, or virtuous citizenry is evidence. Give me the evidence. Sure. I mean, of course, there's the Pennsylvania Convention that said that the Second Amendment right attaches except for crimes committed or for danger to the public. It's a piece of evidence. It wasn't adopted here. It wasn't adopted nationally, but it's a piece of evidence for you. There's also evidence. I mean, there's a number of laws that imposed categorical prohibitions on the possession. Why don't you cite those to me? Which ones are you thinking of? I don't have before nineteen sixty one. Do you have a piece of evidence? I don't have the citations before me. If you go through, there are a number of opinions that go through them. In fact, I think the amicus brief here talks about a number of those sort of categorical prohibitions. I mean, for example, if you go all the way back to England, there was the prohibition on Catholics from possessing. OK, but the argument is that people who might foment rebellion were dangerous. OK, so Catholics, bans on slaves, some other things, some ugly parts of our history were arguably tied to dangerousness. The one thing you pointed me to that isn't at least arguably tied to dangerousness is the minority report from the Pennsylvania Convention. Are you aware of anything else? I don't think that narrowly defining those is tied to dangerousness and isn't highly accurate. And what I would say, Your Honor, is everyone agrees that categorical disarmament was permissible. And then if you think about what is the category of people that have been subject to a loss of certain rights. I mean, Jones is your prototypical example where, you know, the loss of the right to vote, the right to vote on a jury. I think your friends on the other side point is that that made sense under the pre Heller understanding. Oh, this is a civic right. We can take your right to vote. You take a right to serve on jury. We can take your right to arms, except I think Heller rejected the idea that it is a civic political right, the right to serve in some organized militia and treat it as an individual right to defend one's home. So I don't think that analogy is open to you anymore. I think that's reading Heller a little too far. Your Honor, of course, the court in Heller said that it's a right that attaches to individuals. So is the right to vote. So is the right to serve on a jury, to hold public office. The fact that the court also said in Heller that it's a right that at core is held by law abiding and responsible citizens. And that's consonant with this history that this court cited and vendor up that other courts have also cited of the right attached to the virtuous citizenry. So the fact that it's held by individuals doesn't mean that it's not subject to categorical forfeiture upon felony conviction, just like the right to vote. There's a long history of that. A number of courts have recognized it in a certain way. It actually has not been left just categorical by Congress. And even the statute has carved out certain felonies like antitrust, for example, that is concluded are not going to be covered by 922. So is that exclusively the province of Congress to do? And if if Congress can make those kinds of decisions, distinguishing among which felonies are serious, what why isn't it something that we can as applied challenge that the gravity of that offense can't be assessed by by the courts? Sure. So just start specifically with the antitrust exemptions. Nine point one, eight, 20. A capital. And I think that just like Section 925 C, it's a matter of legislative grace. That's the first answer. So the fact that Congress has carved out that exception, just like it allowed for individuals to regain the firearms rights under the prior under 925 C. It's a matter of legislative grace. It doesn't alter the constitutional scope. But I think that, you know, just to focus on that for specifically for a second and then we can talk more generally. There's a reason Congress put that exception in. It was because at the time antitrust crimes were only a felony in a handful of states. It wasn't a felony federally. And so Congress was concerned about the uniform application of the firearm prohibition. And you can see the history there. It's discussed at SREP number eighty nine dash one eight six six. It's a report from 1966, if you're interested. So I don't think, you know, it's not relevant to this first step, the question of whether it's a serious crime. But just if you're if the court's interested now, more generally, I think. What the court inventor of the court acknowledged it has some role to play in determining whether an offense itself is serious, sufficiently serious to result in the loss of firearms rights. We think that once a crime is deemed a felony by a legislature, that role is really quite limited and there's not a lot of reason to go further. But, you know, whether Congress then decides to allow some individuals who lost their firearms rights to nonetheless possess firearms is, I think, a matter of the legislature's determination and doesn't affect the constitutional analysis on the part of this court. Why shouldn't we read it as just for that particular factor? And in that four factor test articulated in Bindrup is as carrying more weight. The fact that it's a felony is something that's taken into account, but it's not preclusive of an as applied challenge. I guess what I think the court mostly looked to in Bindrup was the crime itself as defined, not, you know, the scope of the firearm firearm prohibition. So to the extent your honor, suggesting that the courts would look at, you know, 921 and determining whether a crime is serious. I think that's not totally. That's a little bit contrary to the way the court went about it in Bindrup. Here, what we have is we have a federal felony. It's been a federal felony since before 922 G1 was ever even enacted. It's fraud, lying to the government conduct that has long been considered criminal. It's a Malamin say crime of the Fourth Circuit recognized in the Hamilton. It's considered a felony by the vast majority of states. So, you know, here, I think this plainly is not the extraordinary felony. Even if there were some felonies that wouldn't be deemed serious under Bindrup, this is not that felony. I'm not suggesting that that the limit would be at such a 921, but rather that since we've identified one of the factors is, is it a misdemeanor? Is it a felony? Why? Why wouldn't it just the felt the fact that it's a felony and the nature of the felony be one thing that would be taken into account by a court that was evaluating the restoration of rights with an applicant before them? Well, I mean, I think the fact that a felony is something that the court should take into account. And in fact, it's the most important. I don't know if you're if you're suggesting that there should be other factors besides what the court described in Bindrup. In other words, what the test that we used in Bindrup is a multifactor as applied kind of analysis. Your argument is that felony should be treated categorically. And we never even get into that analysis. The question is, why not? I mean, there's there's a practical concern that was the experience of ATF and trying to make those evaluations. But is there really evidence even in the wake of Bindrup that the courts have been overwhelmed in trying to address those applicants coming forward with prior misdemeanors? Well, practically speaking, I think courts may not have been overwhelmed at this point. But if the court says that a federal felony is not serious based on some sort of evaluation of the crime, then that may raise different issues. But more speaking to the issue more generally, we do think that where the legislature has determined that a crime is both punishable and labeled as a felony, that is a sufficient indication of its seriousness. And the court's opinion in Bindrup suggests as much as well. Or at least leads that, you know, that may be right. And other courts have reached that conclusion. But again, your honor, if the court wants to look or doesn't want to limit the holding just to felonies by itself, there's certainly plenty of evidence in this case that this crime is serious. What I would say is what the court held in Bindrup is that at a minimum, it would be the extraordinary. But what makes this crime so serious if you want to go off on that? Sorry, I mean, you addressed it before. Essentially the restitution part, right? Or the payment of the quarter of a million dollars. Is that right? Yes. Does that make it so serious that one should not? An individual should not have a right to have a firearm for self-protection in their home? Well, it may not by itself, your honor. But here we have a crime that's a felony that's considered criminal across the nation, has long been considered criminal. And then you also have that factor. And I would just say, you know, in Bindrup, the court said that those sentences were minor by any measure. And it seems to suggest that if they had been minor by any measure, then the plaintiffs would have had a hard time. And I just think what Bindrup says, they they get the right to to make their case. And in that case, we knew that the case hadn't been made against them. So why doesn't she she get the right here just to make her case? Well, I think it's not so serious that she should have her gun rights taken away. The case that she has to make your honor, she, of course, bears the burden of showing that her conviction is not serious, despite it being a felony, despite it being subject to 922 G1. And our argument is simply that she hasn't satisfied that burden, your honor. So she she has made the case, but it fails. And that's for all the reasons. If we were to allow persons with convictions of felonies to try to make the case. What do we know from the. Were there a lot of applications filed to the ATF previously for the program? The funding was stopped. What are the consequences? So, I mean, what we know from when Congress defunded 925 C at the time ATF was spending, the Congress set approximately 40 man years annually trying to evaluate these requests. So it was certainly quite a load. And nonetheless, despite spending all that time. And of course, ATF is in a much better position to conduct this sort of inquiry than a court. We would submit, which actually this court held in Panarelli. And despite spending all that time conducting these inquiries, it was still making mistakes. Why is the argument end up somewhat circular? We've been talking about these terms, felony and misdemeanor, like they have some charismatic property. But if a felony is simply a crime that's punishable by more than a year. And we've already said that we have a crime, a state crime, whatever a state's called it, punishable by more than two years, that we can handle as applied challenge, that that's the proper way to proceed. Why shouldn't that be the case with a crime that's punishable by more than one year, regardless of the name that's put on it? Well, I just want to be clear that as we've argued in our briefing here today, this crime is serious under the exact analysis that this court applied and vendor up. All we're saying is that the fact that the crime is labeled a felony, this court said, is a very important indication of seriousness. And given that this is a federal felony, the court doesn't need to go through all the other factors, certainly at the level of detail that it didn't bender up. But regardless, if you apply all the factors as the court didn't bender up, this crime itself is serious and resolvable. I understand. But going back to your argument that it should be categorical, what's what's the best answer to that? That if we are identifying, we're defining the terms felony and non felony just by the length of the sentence. And we've sort of set the length of the sentence aside as the dispositive factor and bender up. Then why categorically should felonies not be subjected to the same as a test? I think the argument for why the fact that this is a felony should be sufficient by itself comes from the language of vendor up, which said, of course, put great weight on the fact that the states categorize those crimes as misdemeanor. But it also comes more generally from the history that individuals convicted of crimes labeled felonies have historically been subject to, you know, forfeiting certain rights like the right to vote and the legislature. I mean, the Supreme Court has has held on. I think courts have recognized that generally courts defer to legislatures judgments about the seriousness of crimes. And when a legislature not only punishes a crime as a felony, but classifies it as a felony, that is an important indication of its seriousness. Except that what I take in Europe said is, yeah, we'll we give a lot of weight to that. But there are some case specific factors that can overcome that. And in that case, the particular facts didn't look very serious. The particular sentences weren't very serious. And the judge and the prosecutor are closer to the specific defendant than a legislature painting with a broad brush and a criminal code is. But, yes, your honor, but the court certainly didn't say that it was only going to look to the sentence in post and determining whether the crime is serious. Otherwise, you know, any time a judge decides to be lenient, then even a clearly very serious crime wouldn't be disqualifying. And the other factors, as we've already discussed, show that this is crime, this crime is serious. So not only is it able to felony, but this is, you know, Malvin say it's fraud. It's conduct that has long been considered criminal and is considered criminal across the country. And that is very different from what was at issue. All right. Thank you very much.  One of the issues with the categorical approach that my colleague is espousing is that that would permit any legislature to enact any law of a felony nature that would automatically strip someone of their right to keep and bear arms. A state could pass a felony statute for parking tickets where on a single isolated parking ticket that one receives. They now, based on a categorical approach, become prohibited from life. And that's what you are saying. Their categorical approach is too broad. But they're saying, you know, you you're going to freeze this in place at the time of the founding. You just told me that absent a constitutional amendment, drug trafficking couldn't be covered. Isn't there somewhere in between somewhere in which the legislature can say, OK, we decide drug trafficking is this serious, you know, but not not parking tickets or fraud or something like that? And I'll concede, I think that's what the Congress was originally intending in enacting the Gun Control Act, because we when we look to the debate over it, it was to prevent violent people or people with a propensity for violence from being able to purchase, possess, utilize firearms and ammunition. And Amici spent a substantial amount of time going over all of that. And to the extent that the court is looking for a middle ground, I would suggest that that be the the real litmus test that we look to see whether the person actually committed an offensive violence or if there's evidence establishing some form of propensity for violence. Might that be done at a categorical level, crime by crime and not necessarily defendant by defendant? I do think it is possible, although in the law there may always be exceptions. I could conceive of some possible crime where maybe generally on its face it would seem to be a prohibitor across the bar under that analysis. Yet in one unique circumstance, someone might, as applied to them, be able to show that a different result would be warranted for that individual. How would you define violent crime in that circumstance? I believe it would obviously have to be well, one criteria would be if a firearm was utilized in the use of that crime. That was actually part of the debate when they enacted the Gun Control Act. Also, I think it would be looking to how violent the offense was. I know that it's kind of using the term to define itself. But if you have something like aggravated assault, I don't think many people would come forth and say aggravated assault isn't a serious offense, doesn't have a substantial, a high level of violence associated with it. The concern is not just that it becomes self-referential, but that we're stepping into the land of void for vagueness. And the courts have wrestled with that in the other context of career offender statute, for example, and have been struggling with how you'd go about defining violent crime, resorting to perhaps the use of force as an element. Is that a way you might suggest that offenses here also be defined? That would have to be an element to be a serious offense. I do think, and that is part of the binder-up analysis, is to look at whether it was a violent offense or not. And that was part of the criteria established by this court to determine whether someone could successfully bring an as-applied challenge. But the question is, what does that mean? And I understand that. I think there are certain types of crimes that I would hope we could all agree to don't involve any form of violence, such as making a false statement to a government official. There's no violence in that type of offense. There are other offenses that clearly involve violence, murder. You know, also, as I said before, aggravated assault. There are those types of offenses that I think everyone can agree that they have violence elements or they don't. And then there are those that kind of fall in the middle ground, where, unfortunately, I'm not sure if we can have a blanket approach. It may require the courts to have to look on a case-by-case basis for those unique offenses. But I believe the supermajority of offenses, we are able to determine whether they involve violence or not on the face of the statute. How would that provide fair notice to people about the consequences of crimes they commit? We don't provide fair notice, in my opinion, to anyone in relation to the loss of a constitutional right currently, especially the right to keep and bear arms. Individuals aren't informed that as a result of pleading guilty or being found guilty of this offense, you'll lose your right to keep and bear arms. The laws are on the books. And we're talking about whether it's to the extent it's applied to felons is unconstitutional. But that law, as it exists, covers felons in possession. It does, but it doesn't specify felons. It says if you're convicted of a crime punishable by more than one year. The word felon does not actually appear in the statute. It's known as the felon in possession law and, in fact, covers more than just felons, as this court dealt with in Vindorup. So that's why I say that I believe we have to take the categorical approach can apply. The answer to that is simple. I mean, some believed or the legislature, legislators, believed that there were certain misdemeanors that, in effect, were the equivalent of a felony, that is, if you got a sentence greater than or a potential sentence greater than two years. I mean, that's what we dealt with in Vindorup. But we certainly didn't deal, I mean, specifically have a footnote that says we're not dealing with felonies. That's correct. And I realize I'm out of time. Obviously, if the court has any additional questions, if permitted, I would like just to make one last statement to the court. I think it's bearing on this case. It comes, actually, from a law review article that's cited to in our brief, Why Martha Stewart Can't Have a Gun by Kevin Marshall. And the only change I'm making to the quote is simply going to be to place Ms. Foligitar's name in the quote instead of Ms. Stewart's. Rationally, there does not seem to be even a legitimate state interest in disarming someone like Ms. Foligitar, apart from increasing her punishment. Yet simple vindictiveness is hard to accept as sufficient ground for stripping someone of a constitutional right. I thank your honors and would just ask that the court please reverse the district court and hold that Ms. Foligitar can bring a successful Second Amendment as applied. Thank you, both counsel, very much for being with us today. And we would also ask, as we did with the prior argument, that you get together with the clerk's office and have a transcript of this oral argument and split the cost. Thank you very much.